UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GETU BEKOYE TAMRAT,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

CASE NO. 2:26-cv-01529-GJL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

Petitioner Getu Bekoye Tamrat ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 2. On May 5, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody and injunctive relief.[1] *Id.*

Respondents to the Petition include Todd Blanche (Acting Attorney General of the United States), Markwayne Mullin (Secretary of the United States Department of Homeland Security), Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Bruce

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 7.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 1

Scott (Warden of the NWIPC), and U.S. Immigration and Customs Enforcement (collectively "Respondents").

On May 6, 2026, the Court ordered Respondents to show cause why a writ of habeas corpus should not be granted. Dkt. No. 4. On June 3, 2026, Petitioner also filed an emergency motion for an order preventing his transfer during the pendency of his Petition. Dkt. No. 16. The Petition has been fully briefed. Dkt. Nos. 1, 11, 15.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. No. 1) **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief as set forth in the conclusion below. The Court's prohibition on Petitioner being removed from either the United States or this jurisdiction (Dkt. No. 19) is **LIFTED**.

## I.     FACTUAL BACKGROUND

Petitioner is a native and citizen of Ethiopia. Dkt. No. 1 at 5; Dkt. No. 11 at 5. He unlawfully entered the United States on or about November 6, 2023. Dkt. No. 12 at ¶ 4. Petitioner was thereafter released on an Order of Release on Recognizance which included various reporting requirements. Dkt. No.12 at ¶ 5. On September 8, 2025, Petitioner reported to United States Immigration and Customs Enforcement ("ICE") and was taken into custody. Dkt. No. 12 at ¶ 11. Petitioner was served a notice of custody redetermination advising that he would be detained, and he was transported to NWIPC where he remains. *Id.*

On October 31, 2025, Petitioner appeared before an Immigration Judge ("IJ") for a merits hearing. *Id.* at ¶ 12. The IJ ordered Petitioner removed to Ethiopia but also granted him withholding of removal. Dkt. No. 1-1 at 1, 3; Dkt. No. 12 at ¶ 12. Both parties waived appeal and the removal order became final on that date. Dkt. No. 1-1 at 4; Dkt. No. 12 at ¶ 12.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 2

ICE thereafter decided to pursue third-country removal for Petitioner. Dkt. No. 12 at ¶ 13. On December 20, 2025, ICE sent a request to Chinese officials to accept Petitioner, but the request was denied. *Id.* at ¶ 14. On February 20, 2026, ICE met with Petitioner to discuss prospective third countries for removal, and Petitioner declined to name a third country. *Id.* at ¶ 16.

On April 3, 2026, Petitioner was served third-country removal notice to Equatorial Guinea. *Id.* at ¶ 18. Petitioner claimed fear of removal to Equatorial Guinea, and his case was transferred to United States Citizenship and Immigration Services ("USCIS") for a fear screening. *Id.*

On April 7, 2026, Petitioner filed his first petition for writ of habeas corpus. *See Tamrat v. Hernandez*, Case No. 2:26-CV-01169-MLP ("*Tamrat I*"); Dkt. No. 11 at 6. On April 10, 2026, Petitioner filed an amended petition to correct a procedural deficiency. *Id.* In *Tamrat I*, Petitioner claimed that his detention was in violation of 8 U.S.C. § 1231(a)(3) and the Administrative Procedure Act ("APA") while his custody determination was in violation of 8 C.F.R. § 241.4(k), the APA, and the Fifth Amendment's Due Process Clause. *See* Petition at 15–17, *Tamrat v. Hernandez*, Case No. 2:26-CV-01169-MLP (W.D. Wash. Apr. 10, 2026), Dkt. No. 8.

While *Tamrat I* was pending, on April 10, 2026, USCIS reached a negative fear determination regarding Petitioner's claim of fear of removal to Equatorial Guinea. Dkt. No. 12 at ¶ 19.

On April 24, 2025, the Court denied Petitioner's first petition for writ of habeas corpus. Dkt. No. 11 at 7. The Court found that Petitioner's detention was still within DHS' discretionary authority. *Tamrat v. Hernandez*, Case No. 2:26-CV-01169-MLP, 2026 WL 1113388, at *3 (W.D. Wash. Apr. 24, 2026). The Court further found that although ICE did not fully comply

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 3

with post-order custody review requirements, Petitioner had not established his custody determination was in violation of the Due Process Clause or the APA. *Id.*, at *4-5. As a result of the denial of the petition, Respondents identified removal plans to Equatorial Guinea for April 28, 2026. Dkt. No. 11 at 7; Dkt. No. 12 at ¶¶ 22–23.

The following day, on April 25, 2026, Petitioner filed an emergency motion for reconsideration and a new request for a temporary restraining order to enjoin his removal. Dkt. No. 11 at 7. The Court granted Petitioner's motion for a temporary restraining order for the purpose of maintaining the status quo to review the merits of the motion after full briefing. Order, *Tamrat v. Hernandez*, Case No. 2:26-CV-01169-MLP (W.D. Wash. Apr. 10, 2026), Dkt. No. 19. As a result of the temporary restraining order, ICE did not continue with the April 28, 2026, removal to Equatorial Guinea. Dkt. No. 12 at ¶ 24. On May 1, 2026, the Court denied Petitioner's motion for reconsideration and lifted the prohibition on Petitioner's removal. Dkt. No. 11 at 7. Petitioner filed the instant habeas matter on May 5, 2026. Dkt. No. 1.

## II.      LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 4

## III.    DISCUSSION

### A.    The Abuse of the Writ Doctrine Does Not Bar Consideration of Petitioner's Habeas Petition

Respondents argue that Petitioner's claims should be dismissed under the abuse of the writ doctrine. The doctrine bars "a successive petition that raises identical grounds for relief as a prior petition" unless certain criteria are met. *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). However, Respondents correctly concede that "[a] petitioner had no fair opportunity to raise the claim in the prior application if the claim was not yet ripe at the time of the first petition, or where the alleged violation occurred only after the denial of the first petition." Dkt. No. 11 at 9 (quoting *Brown v. Muniz*, 889 F.3d 661, 674 (9th Cir. 2018)).

Here, Petitioner alleges a newly ripe *Zadvydas* claim. In *Tamrat I*, Petitioner claimed Respondents violated 8 U.S.C. § 1231(a)(3) and the Administrative Procedure Act when they held Petitioner beyond the 90-day removal period permitted in 8 U.S.C. § 1231(a)(3). Amended Petition for Writ of Habeas Corpus at 8–11, 15–16, *Tamrat v. Hernandez*, Case No. 2:26-CV-01169-MLP (W.D. Wash. Apr. 10, 2026), Dkt. No. 8. The Court found that Petitioner's detention was still within DHS' discretionary authority and commented that Petitioner's "continued detention [did] not implicate the constitutional concerns addressed by the Supreme Court in *Zadvydas*" in part because Petitioner's detention had yet to reach the six-month mark at which his detention would no longer be "presumptively reasonable." *Tamrat v. Hernandez*, No. 2:26-cv-01169-MLP, 2026 WL 1113388, at *3 (W.D. Wash. Apr. 24, 2026). In contrast, Petitioner's continued detention has now surpassed the "presumptively reasonable" threshold, and Respondents concede this truth. Dkt. No. 1 at 23; Dkt. No. 11 at 11 ("The six-month presumptive period recently expired here on April 30, 2026."). Petitioner brings a new claim that

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 5

Respondents have violated the Fifth Amendment's Due Process Clause by detaining Petitioner indefinitely. Dkt. No. 1 at 23.

Accordingly, Petitioner's *Zadvydas* claim is ripe for review and the doctrine of abuse of the writ does not bar Petitioner's claim. *Mendoza Araiza v. Wamsley*, No. 2:26-CV-00421-LK, 2026 WL 1429326, at *3 (W.D. Wash. May 21, 2026) ("Because a *Zadvydas* claim was 'not yet ripe' when Mendoza Araiza filed his petition in *Araiza I*, he did not have a 'full and fair opportunity' to raise that claim previously.") (quoting *Eldridge v. Howard*, 70 F.4th 543, 552 (9th Cir. 2023)).

**B.      Petitioner's Prolonged Detention is Unlawful and Petitioner is Entitled to Release**

In this action, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ. The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the Immigration and Nationality Act ("INA") mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] shall detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." *Id.* at 699.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 6

By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id.*

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Shirdoon v. Scott,* No. 2:26-cv-01150-GJL, 2026 WL 1265503, at *3 (W.D. Wash. May 8, 2026) (citing *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)). If the noncitizen provides good reason, the burden then shifts to the Government to show that removal remains likely within a reasonable timeframe. *Zadvydas*, 533 U.S. at 701. If the Government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, Respondents concede Petitioner's detention has extended beyond the presumptively reasonable six-month period. Dkt. No. 11 at 11 ("The six-month presumptive period recently expired here on April 30, 2026."). Thus, the Court analyzes Petitioner's indefinite detention claim under the burden-shifting framework of *Zadvydas* wherein Petitioner bears the initial

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 7

burden of providing good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

Petitioner has established such "good reason" here. *Zadvydas*, 533 U.S. at 701; *see Rea-Hernandez v. Bondi*, No. 2:25-CV-02609-TL, 2026 WL 322874, at *4 (W.D. Wash. Feb. 6, 2026) ("Courts routinely find that noncitizens [who show they have obtained withholding of removal to the country designated in their removal order and have no ties to other countries] have met their initial burden under *Zadvydas*."). While Petitioner has been ordered removed to Ethiopia, he was simultaneously granted withholding of removal under INA § 241(b)(3). Dkt. No. 1-1 at 2, 4. Respondents are therefore not permitted to remove Petitioner to Ethiopia, the only country listed on his removal order. Dkt. No. 1-1 at 3. Furthermore, Respondents have failed to remove Petitioner to any third country for the past six months, failed to secure a travel document to China, and have not presented Petitioner with a travel document to any other third country. Dkt. No. 1 at 6–8; Dkt. No. 15 at 1, 6.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Zadvydas*, 533 U.S. at 701. Respondents have failed to do so. Respondents state that Petitioner was served third country removal notice to Equatorial Guinea but fail to tender sufficient evidence that removal is imminent.[2] Instead, Respondents refer the Court to *Tamrat I* and discuss their previous intentions to remove Petitioner, but they fail to tender sufficient evidence demonstrating any current or future efforts to remove Petitioner. Dkt. No. 12 at ¶ 22 ("[Respondents] intended to remove Petitioner from the United States on April 28, 2026, with removal plans to Equatorial Guinea based on a negative fear claim to Equatorial

---

[2] In fact, Respondents have failed to file any supportive documentation except the declarations of Karl Douglas, Deportation Officer, and Janese Mull, Acting Deputy Assistant Director of Removal Management Division, South, neither of which contain supporting exhibits. Dkt. Nos. 12, 13.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 8

Guinea and diplomatic assurances between the governments of the United States and Equatorial Guinea.").

Instead, Respondents merely refiled the declaration of Janese Mull, Acting Deputy Assistant Director of Removal Management Division, South, from *Tamrat I* in support of their removal efforts. Dkt. No. 13. In the declaration, Acting Deputy Assistant Director Mull states, "Petitioner is accepted to be removed pursuant to a Third Country Removal agreement between the United States and Equatorial Guinea[,]" and "[Respondents] received notification that the Petitioner's name was accepted by the Government of Equatorial Guinea as per [Respondents] prior elevation request pursuant to the Third County Removal agreement that the Department of State negotiated and signed with the Government of Equatorial Guinea." *Id.* at ¶¶ 4, 6. "Given the Petitioner's acceptance, ICE intends to remove the Petitioner to Equatorial Guinea on April 28, 2026[,] absent any stay or temporary restraining order. The [P]etitioner's acceptance by Equatorial Guinea and placement on the manifest for this charter serves as the travel document in the Petitioner's removal." *Id.* at ¶ 7.

Without more, Respondents' refiled declaration is simply insufficient to rebut Petitioner's showing in this case, which was opened on May 5, 2026. Respondents have not provided any traditional documentation to establish imminent removal. Rather, without citing any additional persuasive authority, Respondents appear to suggest "[P]etitioner's acceptance by Equatorial Guinea and placement on the manifest for [a previous] charter" suffices as a travel document for a future removal date. *Id*.; Dkt. No. 11 at 11. Even if this Court could accept such a showing, Respondents have failed to tender any supporting documents that could meet even this novel standard such as Equatorial Guinea's acceptance of Petitioner, the manifest for the charter, or even the agreement between the Government and Equatorial Guinea.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 9

Not only are the statements unsupported by any meaningful documentation, the Mull Declaration only demonstrates Respondents' past intentions. In addition to these earlier undocumented claims, relying upon this declaration now requires this Court to speculate that these unsubstantiated removal conditions remain unaffected by the passage of time. Even if the Mull Declaration were sufficient to establish a significant likelihood of removal on April 28, 2026, that date has passed, and it does not establish a significant likelihood of removal in the future. *See e.g.*, *Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1237–38 (W.D. Wash. Jan. 6, 2026) (finding Respondents' intentions insufficient to show a significant likelihood of removal in the foreseeable future); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1198–99 (W.D. Wash. Dec. 4, 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.") (collecting cases).

For the same reasons, the declaration of Karl Douglas, Deportation Officer, is also insufficient. Dkt. No. 12. Officer Douglas states Petitioner was scheduled for a "flight from the Western District of Washington for staging prior to the intended removal flight to Equatorial Guinea on April 28, 2026." Dkt. No. 12 at ¶¶ 18–24. However, statements about Respondents' past intentions are not sufficient evidence that removal is imminent or even likely to occur in the future. Officer Douglas further states that Respondents "will schedule Petitioner's removal to Equatorial Guinea for a future date." Dkt. No. 12 at ¶ 26. Officer Douglas also states the next available flight to Equatorial Guinea is in June 2026, but, again, does not tender evidence that Petitioner will be on that flight or any future flight. *Id.* at ¶ 26. Respondents' vague assertion that they will effectuate Petitioner's removal in the future is insufficient to rebut Petitioner's showing. *See e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 10

The circumstances from *Tamrat I* have changed. Not only has Petitioner's detention surpassed the six-month presumptive period, but also, here, Respondents have not demonstrated Petitioner's removal is imminent. At best, Respondents' declarations suggest Petitioner's removal was *possible at some point in the future*. This showing fails to meet the elevated burden that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. *Id.*; *Kamyab v. Bondi*, No. 2:25-CV-00389-RSL, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025).

Accordingly, Petitioner's continued detention is no longer authorized by the Immigration and Nationality Act as construed in *Zadvydas* and runs afoul of due process.

**C.      Petitioner Is Entitled to Immediate Release and, in Part, to Injunctive Relief**

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700.

Accordingly, the Court concludes that the appropriate relief is an order directing Respondents to release Petitioner from immigration detention under reasonable conditions of supervision. Because the Court will grant the release of Petitioner on his first ground for relief, the Court declines to reach Petitioner's second and third grounds for relief, which appear to be pled in the alternative. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (explaining that courts should avoid resolving a constitutional question "unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 11

In his remaining grounds for relief, Petitioner invokes the Court's habeas and federal question jurisdiction to request injunctive relief. Dkt. No. 1 at 4–5. As these grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each ground in turn.[3] *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

Specifically, Petitioner requests: (1) an injunction enjoining Respondents from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (2) an injunction enjoining Respondents from re-detaining Petitioner without obtaining a valid travel document to a third country, providing the valid travel document to him and his counsel, and providing him with the opportunity to challenge the third country removal; (3) an injunction enjoining Respondents from removing Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (4) an injunction enjoining Respondents from removing Petitioner to

---

[3] While the Court addresses the remaining grounds to fashion appropriate habeas relief, the Court acknowledges Respondents' argument that Petitioner's claims are barred by the abuse of the writ doctrine. However, Petitioner's new claims are not identical to the claims asserted in *Tamrat I*, the Court in *Tamrat I* did not review or decide these claims on the merits, and, instead, the Court in *Tamrat I* dismissed the petition without prejudice. *Mendoza Araiza v. Wamsley*, No. 2:26-CV-00421-LK, 2026 WL 1429326, at *2 (W.D. Wash. May 21, 2026) (reasoning that the doctrine bars only successive petitions that raise claims "*identical*" to those in the prior petition) (quoting *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023)); Order Denying Petitioner's Motion for Reconsideration at 6, *Tamrat v. Hernandez*, Case No. 2:26-CV-001169-MLP (W.D. Wash. Apr. 10, 2026), Dkt. No. 24. ("The Court . . . observes that Petitioner did not assert in his petition any claims directly challenging his third-country removal and, . . . the Court made no substantive findings relating to Petitioner's third-country removal, or the designated removal country.").

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 12

any third country where he is likely to face imprisonment or other punishment upon arrival. Dkt. No. 1 at 4, 28–29.

### 1. Re-detention.

With respect to Petitioner's first request, the Court concurs that Respondents must comport with due process should they re-detain Petitioner. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). However, the record does not contain sufficient argument or authority to establish that, in all circumstances preceding a future re-detention, the Due Process Clause would be violated in the absence of these specific procedures. Thus, the Court declines to prescribe a comprehensive procedural framework for any potential re-detention decision Petitioner may face.

### 2. Third-Country Removal

With respect to Petitioner's second and third requests, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing Petitioner to a third country without notice and meaningful opportunity to respond.

"A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), and *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025)). Given the speed at which third-country removal can be executed once the decision to pursue such removal under this policy is made, these courts also find requests for injunctive relief ripe for adjudication

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 13

even without evidence of the Government's active efforts to pursue third-county removal of the noncitizen. *Id.*; *see also Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026) (noting that, under the current policy, a noncitizen "could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention").

Thus, where, as here, the Government does not dispute a noncitizen is subject to the current third-country removal policy, an order enjoining execution of that policy is appropriate. *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (granting relief and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country."); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy …there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting petitioner's removal to third country is imminent).

The Court otherwise denies Petitioner's request to enjoin Respondents from re-detaining Petitioner without obtaining a valid travel document to a third country, providing the valid travel document to him and his counsel, and providing him the opportunity to challenge the third country removal. The record does not contain sufficient argument or authority to establish that, in all circumstances preceding a future re-detention, the Due Process Clause or any statutory authority would be violated in the absence of these specific procedures.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 14

3.    Punitive Third-Country Removal

With respect to Petitioner's fourth request, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing him to a third country where he is likely to face imprisonment or other punishment upon arrival.

Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. No. 1 at 26–28 (citing *Wong Wing v. United States*, 163 U.S. 228, 236–38 (1896)). Respondents contend only that Petitioner's claim on this ground should be denied because it is speculative. Dkt. No. 11 at 12. However, courts in this District have recently granted relief on similar claims, holding that the Government's third-country removal policy is punitive and therefore unconstitutional under *Wong Wing*. *Nguyen v. Hermosillo*, No. 2:26-CV-00335-GJL, 2026 WL 538497, at *8 (W.D. Wash. Feb. 26, 2026); *See Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1201–05 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 732–35; *but see Somsanuk v. Bondi*, No. 26-CV-48-MLP, 2026 WL 221139, at *6 (W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "*any* third country," concluding such a claim was overbroad (emphasis added)).

These courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice." *Baltodano*, 815 F. Supp. 3d at 1202 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34). The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the [G]overnment is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted).

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 15

The courts in *Baltodano* and in *Abubaka*, relying heavily on the *Nguyen* reasoning, concluded that Respondents' "practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 815 F. Supp. 3d at 1203 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's recent authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or other punishment upon arrival.

**D.      Petitioner's Emergency Motion is Moot**

As noted above, Petitioner filed an emergency motion, Dkt. No. 16, seeking to preserve the Court's jurisdiction over the pending Petition. As this Court has now reviewed Petitioner's claims and determined that Petitioner is entitled to the relief he seeks by way of this federal habeas action, i.e., release from custody, his motion is effectively moot.

**IV.      CONCLUSION**

Based on the foregoing, the Court **GRANTS** the petition for writ of habeas corpus (Dkt. No. 1) and **GRANTS IN PART** Petitioner's request for a permanent injunction. The Court's prohibition on Petitioner being removed from either the United States or this jurisdiction (Dkt. No. 19) is **LIFTED**. The Court **ORDERS** as follows:

    (1)    Respondents **SHALL** immediately release Petitioner Getu Bekoye Tamrat from custody on reasonable conditions of supervision;

    (2)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

    (3)    Respondents **SHALL NOT** remove Petitioner to a country other than the country designated in his Order of Removal without first providing him

with written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(4)     Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 30th day of June, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 17